IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHIRLEY ELLERBE,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>CHESTER DOWNS AND MARINA, LLC,<br>*d/b/a Harrah's Philadelphia Casino & Racetrack*,<br><br>　　　　　　Defendant. | CIVIL ACTION<br><br>No. 21-1641-KSM |

## MEMORANDUM

**MARSTON, J.**                                                                    November 17, 2021

　　　　Plaintiff Shirley Ellerbe brings a negligence claim against Defendant Chester Downs and Marina, LLC.  Chester Downs has moved for summary judgment.  For the reasons discussed below, that motion is granted.

### I.    *Background*

　　　　Viewing the evidence in the light most favorable to Ellerbe, the relevant facts are as follows.[1]  On March 11, 2019, Ellerbe tripped and fell while at Chester Down's Harrah's Philadelphia Casino & Racetrack in Chester, Pennsylvania.  (Doc. No. 13 at pp. 30–32; Doc. No. 13, Ex. C, Ellerbe Dep. at 26:20–27:20.)  While walking across the gaming floor, Ellerbe tripped over a wire, which was taped to the floor with beige tape.  (*See* Doc. No. 13, Ex. B, Incident File Full Report, at p. 33 (photograph).)  On either side of the beige tape, Chester Downs had placed

---

[1] Collectively, the parties have given the Court 10 pages of evidence:  the Incident File Full Report drafted by Chester Downs's Security Department (Doc. No. 13, Ex. B, at pp. 29–33), a photograph of the wire (Doc. No. 16-1), a screenshot from the surveillance video of the incident (Doc. No. 16-2), and four pages from Ellerbe's deposition (Doc. No. 13, Ex. C, at pp. 34–36).

bright orange tape, which set off the taped wire from the blue and brown carpet. (*See id.*; *see also* Ellerbe Dep. at 26:14–15 ("Q: Do you see two lines of orange tape? A: Yes.").) As she tripped, Ellerbe fell forward, landing on her left knee and striking her head against a trash can. (Ellerbe Dep. at 27:8–20.) Officers with Chester Down's Security Department responded to the fall and called EMS. (*See* Doc. No. 13, Ex. B at pp. 30–31.) Ellerbe had no visible injuries but stated she felt shooting pains in her left shin and requested that EMS transport her to the hospital. (*Id.*)

On February 9, 2021, Ellerbe filed a personal injury complaint in the Philadelphia County Court of Common Pleas, asserting a negligence claim against Chester Downs.[2] On April 7, 2021, Chester Downs removed the case to this Court (Doc. No. 1), and the Court held a preliminary pretrial conference on May 12, 2021 (*see* Doc. No. 4). On October 12, 2021, after the close of discovery, Chester Downs moved for summary judgment, arguing that it is entitled to judgment as a matter of law because the taped wire was an open and obvious condition about which it had no duty to warn. (Doc. No. 13.) Ellerbe opposes that motion. (Doc. No. 16). For the reasons discussed below, the motion is granted.

## II.    Legal Standard

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the

---

[2] The complaint initially included four counts, each sounding in negligence, and named four defendants. (*See generally* Doc. No. 1, Ex. A, Complaint.) Pursuant to the parties' stipulation, Counts I, III, and IV were dismissed, and the caption was amended so that the only remaining Defendant is Chester Downs and Marina, LLC d/b/a Harrah's Philadelphia Casino & Racetrack. (*See* Doc. No. 1 at pp. 121–22.)

parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotation marks omitted). After the moving party has met its burden, the nonmoving party is required to "designate specific facts showing that there is a genuine issue for trial." *Id.* at 323 (quotation marks omitted).

### III.   Discussion

To succeed on her negligence claim, Ellerbe must show: (1) Chester Downs owed her a duty; (2) it breached that duty; (3) a causal relationship exists between the breach and Ellerbe's injury; and (4) Ellerbe suffered an actual loss. *See Brownlee v. Home Depot U.S.A., Inc.*, 241 A.3d 455 (Tbl.), 2020 WL 6197405, at *8 (Pa. Super. Ct. 2020). Chester Downs focuses on the first element, arguing that it did not owe Ellerbe a duty.

As a patron at the casino, Ellerbe was a business invitee of Chester Downs at the time she tripped. *See Thomas v. Family Dollar Stores of Pa., LLC*, Civil Action No. 17-4989, 2018 WL 6044931, at *2 (E.D. Pa. Nov. 19, 2018) ("A business invitee is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with the business dealings with the possessor of the land." (quotation marks omitted)). "It is well-established that a landowner 'is under an affirmative duty to protect a business visitor not only against known dangers, but also against those which might be discovered with reasonable care.'" *Brownlee*, 2020 WL 6197405,

at *4 (quoting *Campisi v. Acme Mkts.*, 915 A.2d 117, 119 (Pa. Super. Ct. 2006)).

"There is no duty, however, upon the possessor of land to warn or guard a business invitee against a danger that is obvious." *Druding v. City of Philadelphia*, 97 A.2d 365, 366 (Pa. 1953) (quotation marks omitted); *see also Rogers v. Max Azen, Inc.*, 16 A.2d 529, 531 (Pa. 1940) ("[O]rdinarily, no liability attaches for injuries from alleged dangers or defects which were obvious or known to the person injured, for, all that the law requires is that the premises be so constructed and maintained that they can be used without danger by persons using ordinary care for their own safety."). "No person is required to take extraordinary precautions to save adults in apparent possession of their reasoning faculties from the consequences of their own inattentiveness and carelessness." *Druding*, 97 A.2d at 366 (quotation marks omitted).

Chester Downs argues that it is entitled to summary judgment on Ellerbe's negligence claim because the taped-down wire was an obvious danger that Ellerbe should have noticed and heeded. (Doc. No. 13 at p. 2.) We agree. The taped section over which Ellerbe tripped was offset with bright orange tape, which would have been obvious to a reasonable person watching where they were walking. Ellerbe argues that the orange tape is red and that it is hard to see against the carpet, which also has a thin red line running perpendicular to the wire. We are not convinced. For one, whether we call it "orange" or "red," the photograph shows that the tape is wider, brighter, and running a different direction than the single, thin red line on the carpet. (*See* Doc. No. 16-1.) And with the exception of the single red line, the carpet is brown and blue, so the orange tape stands out against it. (*Id.*) In short, "both the condition and the risk" posed by the taped section would have been apparent to and recognized by a reasonable person, in Ellerbe's position, "exercising normal perception, intelligence, and judgment." *Thomas*, 2018 WL 6044931, at *3 (quotation marks omitted); *see also Berrocal v. Acme Mkts., Inc.*, Civil

4

Action No. 16-1797, 2016 WL 6821943, at *1 (E.D. Pa. Nov. 18, 2016) ("A danger is deemed obvious when both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence, and judgment." (quotation marks omitted)).

Next, Ellerbe argues that the orange tape would not have been obvious to a reasonable person because the taped section was close to the slot machines, which would have caused "a significant distraction." (Doc. No. 16 at p. 9.) But "[i]t is hornbook law in Pennsylvania that a person must look where he is going," and "customers are not relieved of the responsibility of watching for obstacles while they walk, even if they are distracted" by a business display. *Thomas*, 2018 WL 6044931, at *3 (quotation marks omitted).

Last, Ellerbe argues that there were better options available to Chester Downs and that it should have used yellow tape instead of orange or placed barriers around the area. (Doc. No. 16 at p. 9.) But even assuming these options would have done a better job of warning patrons, it does not change our result in this case. Regardless of the other options available to Chester Downs, the option that it chose — orange tape — rendered the taped-down wire an obvious danger, which a reasonable person in Ellerbe's position would have seen and heeded.[3] *Cf.*

---

[3] Ellerbe also argues that Chester Downs should not have had a wire there at all, suggesting that the wire itself posed an unreasonable danger as opposed to the entire taped-down section. (Doc. No. 16 at p. 9.) Ellerbe asserts that Chester Downs had a duty to protect patrons from the dangers posed by the wire, and it breached that duty when it let the wire remain in a "well traveled pathway" and provided no better warning than the orange tape. (*Id.*) Assuming that Ellerbe is correct and Chester Downs had a duty to protect patrons from the dangers posed by the wire, there is no genuine dispute that Chester Downs satisfied that duty. The wire was secured so that patrons would not catch their feet on it, and the beige tape was offset with bright orange tape that clearly warned all invitees about its existence and its danger as a tripping hazard. *See Rogers*, 16 A.2d at 530 ("The general rule is that one who holds his premises open for the reception of business visitors owes them a duty to have the premises in a reasonably safe condition, so that they will not be unnecessarily or unreasonably exposed to danger, and to give adequate warning of any failure to maintain them in that condition."); *see also Church v. R & K Foods of Pa., Inc.*, 251 A.3d 1259 (Tbl.), 2021 WL 1112504, at *3 (Pa. Super. Ct. March 23, 2021) (affirming trial court's finding that the restaurant satisfied its duty by placing a large "Wet Floor" cone in the area of the wet floor). Again, just because Ellerbe thinks Chester Downs could have done a better job of warning its

*Druding*, 97 A.2d at 367 ("Where a person dives into a pool at a point where the water is only up to a bather's knees and fails to look or if he looked [but] fails to notice and avoid such an obvious danger, he is guilty of contributory negligence as a matter of law."); *Berrocal*, 2016 WL 6821943, at *3 ("[A] reasonable person in Mrs. Berrocal's position, exercising normal perception, would have observed the pile of blueberries on the floor and the potential slipping hazard and condition they presented."); *see also Rogers*, 16 A.2d at 331 ("Disclosing, as it does, thoughtless inattention to her surroundings and a complete failure to be duly observant of where she was stepping, this testimony leaves no room for speculation as to the sole cause of appellee's injuries. It brings the case within the rule that where one is injured as the result of a failure on his part to observe and avoid an obvious condition which ordinary care for his own safety would have disclosed, he will not be heard to complain."). Because the taped wire was obvious, Chester Downs owed Ellerbe no duty. And because no duty existed, Ellerbe cannot establish a negligence claim, and Chester Downs is entitled to summary judgment. *See Berrocal*, 2016 WL 6821943, at *1 (explaining that when "reasonable minds could not differ as to the conclusion," the court may decide on summary judgment whether the condition was obvious).

## IV.     Conclusion

Summary judgment is granted in favor of Chester Downs. An appropriate Order follows.

---

patrons, does not render Chester Downs's actions unreasonable.